[Crim. No. 4546. In Bank. Sept. 12, 1944.]

THE PEOPLE, Respondent, v. THEODORE GONZALES, Appellant.

William G. Kenney and James A. Starritt for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

SHENK, J.—The defendant was convicted by a jury without recommendation on two counts of murder, and on a third count of assault with a deadly weapon with intent to commit murder. He moved for a new trial. His motion was denied. Judgment and sentence followed the law and the death penalty was imposed. The defendant appeals from the judgments and from an order denying his motion for a new trial.

At 12:30 a.m. of Sunday, March 7, 1943, the defendant walked up to the open doorway of Las Palmas Community Hall in the Mexican center of San Fernando in Los Angeles County, and in apparent cold blood shot three men, killing two and wounding the third. A dance was in progress in the hall as an invitational affair given by Mrs. John Garcia, now the widow of one of the decedents, to celebrate her husband's 29th birthday. About an hour before the fatal affray the defendant and four of his companions had approached the hall with the intention of participating in the dancing, under the belief that the party was open to the public. The defendant passed through the doorway, but Olivas, his companion next behind him, was stopped by one Salas and asked for his invitation. Olivas insisted on entering without an invitation. The argument was continued outside the hall and a general fight ensued in which the defendant claimed that several of the men "caught up" with him and inflicted on him a black eye, a cut lip and a blow on the head. The defendant and his companions walked to a pool room in San Fernando and induced three boys with a sedan to convey them to the defendant's home in Pacoima, a distance of nearly three miles, where the defendant procured cartridges for a revolver which

he had permitted Olivas to carry that evening without ammunition. They returned to the dance hall where the defendant stepped out of the automobile saying, "You are going to see me in action now." With the revolver in his hand, and Olivas following him, the defendant walked the distance of twenty-five feet between the fence gate and the hall and stepped into the doorway saying. "Get out of the way, there is going to be trouble." He picked out and shot first, Theodore Castro, who was seated near the door; then John Garcia, who stood up and started toward Castro when the latter fell. The lights went out. Pasqual Chacon followed the defendant out of the hall and grappled with him when he too was shot. Garcia died the next day, and Chacon on March 20th. Castro recovered after several months in the hospital and seven operations. There is no dispute about the fact that the defendant shot each of the men under the circumstances briefly outlined.

The defendant found his way to his home in Pacoima and the next day with two of his companions of the previous evening left Los Angeles County bound for Arizona. About ten days later he separated from the other young men, whom he did not see again until the time of trial, and went to Mexico. He was apprehended in Los Angeles County on August 17th, 1943. On that day he talked to five officers of the police department and the sheriff's office in the presence of a shorthand reporter. The defendant was with the officers less than ten minutes before the reporter arrived. Thereafter, the entire conversation, lasting about fifty-five minutes, was taken down in shorthand, and later transcribed. In the conversation that took place in the presence of the reporter the defendant admitted his identity and that he had shot the three men. He then said nothing to indicate that he had not been completely conscious of what he was doing.

At the trial the facts independent of the conversation were first established. The People then offered the transcript of the conversation in evidence. As a foundation the prosecution introduced the testimony of witnesses to the effect that no threat or duress was directed to the defendant, nor any promise of immunity made or hope of reward held out to him; that his statements and answers to questions were freely and voluntarily made both before and after the arrival of the reporter. Thereupon counsel for the defendant moved the court to excuse the jury so that he might, in the jury's absence,

have the opportunity to offer proof to the effect that the conversation in the presence of the officers was not free and voluntary. The motion was denied and the trial of the issue continued before the court in the presence of the jury.

The defense called the officers present at the conversation. They testified that one of them questioned the defendant. When asked his name, the defendant replied ''Jose Espinoza.'' He gave false answers to the questions concerning his residence, his activities and occupation, and his own and his parents' identity. The officers used no menacing or threatening attitudes or words. The defendant was not told that it would be better for him if he talked, or worse if he declined, nor was any offer of help extended to him. When he was confronted with a photograph of himself with his name on it he admitted his identity. From that point the conversation was taken down by the reporter who testified that he recorded the entire conversation, during which no promises, threats or duress were disclosed. The defendant took the witness stand for the purpose of establishing duress and promises of immunity. He testified that before the reporter arrived the officers told him they had turned the other boys loose and were not going to put a murder charge against them; that ''they said they would help me out and that I would not get the gas, that they would try to put some other charge instead of murder''; that he answered their questions as reported ''because they said they were going to save me from gas. They said they would help out. They said they were my friends,'' and that he made the statement in the belief that they would help him. He claimed that he didn't want to make any statement because he didn't remember anything.

Over the defendant's objection the court permitted the transcript of the conversation to be read to the jury. After the preliminary questions with reference to his identification the first question addressed to him was whether he wanted to make a statement as to what happened at the time of the shooting, to which he answered: ''Sure. I tell you.'' The transcript shows that in response to questions he then voluntarily related the events in detail, obviously from his own recollection. He stated that he remembered what happened, that he shot the three men against whom he had no grudge except that they beat him; he didn't remember what he told the boys as he approached the hall. ''A. I don't know if I

told them anything. I was mad. I don't remember nothing. I was real mad. I had a rage in me. I don't remember what I told them. All I know I was going to get even, that is all.''

As a witness at the trial the defendant testified that he recalled nothing after the beating he received except getting into a car; that he did not remember shooting Mr. Castro, Mr. Garcia or Mr. Chacon; that the first thing he remembered was waking up in his own house; that when he met the boys they told him what had happened. He admitted having been asked the questions by the officers and having given the answers as transcribed, but claimed that the events which he had related as occurring between the fight prior to the shooting and his awakening in his home were based, not on his own recollection, but on what the boys had told him. He remembered that he was mad because the boys told him he ''looked real mad.'' As to matters that could not have been known to the boys, who had run away when the shooting started, such as that he walked back to his home in Pacoima, he said he didn't remember, that he just ''made that up.'' He testified that he was not threatened nor assaulted by the officers at the time he made the statement; that they had not forced him to talk, and that he answered all the questions freely and voluntarily.

It is apparent that there was no inducement held out to nor violence used upon the defendant. His statement to the the officers that ''You know everything already,'' revealed the true motive for his declarations, namely, that the officers already had possession of all the facts and he could gain nothing by refusing to talk. It was said in *People* v. *Oliveria,* 127 Cal. 376, 381 [59 P. 772] : ''It would be a strange rule that would allow the confessions of a defendant to be given in evidence upon clear proof that they were made voluntarily and without any promise, threat, or inducement, and then allow them to be stricken out upon the defendant testifying that they were made under the fear of a threat or the influence of a promise. If such were the law, it would always lie in the power of a defendant to clear away from the case all confessions by his own evidence, and this regardless of the truth of such testimony.''

 It is unnecessary to determine the precise nature of the admissions or declarations of the defendant, or whether they constituted a confession of guilt. The respondent con-

tends that they do not, but, as pointed out in *People* v. *Quan Gim Gow,* 23 Cal.App. 507, 512 [138 P. 918], citing *Bram* v. *United States,* 168 U.S. 532, 557 [18 S.Ct. 183, 42 L.Ed. 568], how far the admissions and statements tend to prove guilt is immaterial. The question of the measure of proof resulting from a confession does not arise in considering its admissibility. It is assumed that the rules concerning the admissibility of confessions apply here. ▉ When applied the conclusion irresistibly follows that the trial court in this case correctly determined that there was no evidence worthy of credence that the answers and statements of fact made by the defendant were improperly induced by anything that the officers said or did; that they were free and voluntary, and that they were therefore competent to go to the jury. The "confession," as we may call it, was not essential to prove the facts of the homicides and the assault, nor the identity of the perpetrator thereof. Those facts already had been established without question. Considering the undisputed testimony otherwise, there was little to be gained by the introduction of the confession except to negative the inconsistent later claim of the defendant regarding his consciousness at the time of the homicides. Also independently of that negation there was opinion evidence elicited on cross-examination of the defendant's expert witness that the acts incontrovertibly attributed to the defendant at the times and under the circumstances were committed by a conscious person.

It is the constitutional privilege of an accused not to be compelled to be a witness against himself. Public policy requires the rejection of confessions obtained by means of promises of immunity, violence, threats or duress. This court recently reiterated the necessity of complete freedom in the matter of the confession of criminal acts before the declarations may be admitted in evidence. (*People* v. *Jones, ante,* p. 601 [150 P.2d 801]; *People* v. *Rogers,* 22 Cal.2d 787 [141 P.2d 722].) ▉ The mere fact that the confession was made to police officers and while the accused was under arrest does not necessarily render it involuntary and inadmissible. (*People* v. *Lisenba,* 14 Cal.2d 403, 421 [94 P.2d 569]; *Lyons* v. *Oklahoma* [decided June 5, 1944], 322 U.S. 596 [64 S.Ct. 1208, 88 L.Ed. ——].)

The defendant contends that the court committed preju-

dicial error in denying his motion to present to the court in the absence of the jury evidence on the issue of the voluntary nature of the confession for the purpose of determining its admissibility; and that the court also erred prejudicially by refusing to give a requested instruction on that issue.

By section 2102 of the Code of Civil Procedure all questions of admissibility of testimony are for the court. It is the law of this state that it is for the court in the first instance to determine from the attendant circumstances whether the confession was free and voluntary and therefore competent for the jury to consider. But it is not the law that the evidence determinative of the nature of the confession and of its admissibility must be heard by the court preliminarily out of the hearing of the jury.

The procedural steps in the matter of receiving confessions in evidence are outlined in the decisions. At the time the confession is offered, it is incumbent on the prosecution to lay the foundation for its introduction by preliminary proof showing that it was freely and voluntarily made. (*People* v. *Soto,* 49 Cal. 67; *People* v. *Miller,* 135 Cal. 69 [67 P. 12].) Before the confession is received, however, the defendant if he requests it must be accorded the opportunity to introduce evidence to overcome the prima facie showing, and if incrimination is dependent upon the confession a refusal of the court to permit such opportunity may constitute prejudicial error. (*People* v. *Gibson,* 28 Cal.App. 334 [152 P. 316]; *People* v. *Columbus,* 49 Cal.App. 761, 763 [194 P. 288]; *Cf. People* v. *Miller, supra; People* v. *Eli,* 131 Cal.App. 482 [21 P.2d 654]; *People* v. *Crowl,* 28 Cal.App.2d 299 [82 P.2d 507].) It is the function of the court in the first instance to resolve any conflict in the evidence on the subject (*People* v. *Jim Ti,* 32 Cal. 60; *People* v. *Oliveria, supra*), and if the court concludes that the confession was not free and voluntary it has the power and is in duty bound to withhold it from the jury's consideration. However, if there is evidence that the confession was free and voluntary, it is within the court's discretion to permit it to be read to the jury, and to submit to the jury for its determination the question whether under all the circumstances the confession was made freely and voluntarily. (*People* v. *Oliveria, supra; People* v. *Zarate,* 54 Cal.App. 372 [201 P. 955].) In such a case the court

passes preliminarily on the question of the voluntary nature of the confession and its admissibility and although it may determine that the confession is voluntary and admissible, its ruling is not binding on the jury; and it is for that body "to determine in the last analysis whether a confession is freely and voluntarily made." (*People* v. *Fouts,* 61 Cal.App. 242, 245 [214 P. 657]; *People* v. *Black,* 73 Cal.App. 13 [238 P. 374]; *People* v. *Dye,* 119 Cal.App. 262, 270 [6 P.2d 313].) The jury determines the issue of the nature of the confession, that is, whether it is voluntary or involuntary, on all the evidence on the issue; and the court is not required to receive evidence out of the hearing of the jury for the purpose of determining preliminarily the question of admissibility. (*People* v. *Black, supra; People* v. *Nelson,* 90 Cal.App. 27 [265 P. 366]; *People* v. *Leavitt,* 127 Cal.App. 394, 398 [15 P.2d 894]; for review of the authorities see *State* v. *Crank,* —— Utah —— [142 P.2d 178]; 20 Am.Jur. p. 454.) Under the law of this state the court did not err in refusing to receive, out of the hearing of the jury, the evidence bearing upon the admissibility of the defendant's confession.

▇ The court refused to give an instruction requested by the defendant to the effect that the question of the free and voluntary nature of the confession was for the jury to determine. It gave no instruction specifically covering the same ground, nor did it withhold that question of fact from the jury. The court was apparently of the view that its general instruction to the effect that all questions of fact were for the jury to determine was sufficient. The defendant was entitled to have the jury instructed appropriately on the subject. (*Lyons* v. *Oklahoma, supra.*) But in such cases this court may consider the question whether the failure to give the omitted instruction resulted in a miscarriage of justice. (*People* v. *Rogers,* 22 Cal.2d 787 [141 P.2d 722]; Cal. Const., art. VI, § 4½.) An examination of the record discloses beyond a reasonable doubt that independently of the confession the evidence pointed to the guilt of the defendant and that the jury would have come to the same conclusion had the confession not been received, or, having been received, had the jury been expressly instructed that the question of the voluntary or involuntary nature of the confession was for

it to determine. (See *People* v. *Eli, supra; People* v. *Souris-seau,* 62 Cal.App.2d 917 [145 P.2d 916].)

The judgments and the order denying the motion for new trial are affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.