PEEK, J.
 

 The defendants were charged with the murder of their daughter, Sandra, who was 4% years old. The child died from shock resulting from traumatic injuries which the State contends were caused by a beating administered by both defendants. The jury returned a verdict of murder in the second degree against both defendants, and from the judgment of conviction entered upon this verdict the defendant Opal Schindler alone appeals.
 

 In order to establish appellant’s participation in the crime, the prosecution relied primarily upon the testimony of Mrs. Yerlie Nolan, a court reporter who had taken stenographic notes of extrajudicial statements made by appellant and her husband. Appellant does not question the sufficiency of the evidence to support the judgment if her extrajudicial confession was properly admitted. Her main contention is that the admission of said statement into evidence constituted prejudicial error, and hence that the judgment must be reversed. From our examination of the record we have concluded that appellant’s contention in this regard must be sustained.
 

 Exclusive of the purported confession of appellant, the evidence most favorable to the prosecution discloses that Sandra misbehaved at the breakfast table. Appellant “took a switch”
 
 *586
 
 to her, then for further disciplining took the child to her father who beat her for approximately 45 minutes with switches and a leather belt. When it later became evident that the child was seriously ill or dead, the defendants decided to notify the authorities. They informed the sheriff’s office at Chowehilla, and upon the advice of that office took Sandra to a doctor. Claude, appellant’s husband and codefendant, stated to a deputy sheriff and the doctor that he took full responsibility for the child’s death. Expert medical testimony established that she died of • shock resulting from injuries received in the beating, and that her wounds could not have been self-inflicted. Prom the time appellant was first questioned on January 7 until her purported confession on January 10, she consistently maintained her innocence of the crime, stating that although she was in the house at the time, she did not participate in the beating. This version of the crime was substantially confirmed by her husband. When the witness Nolan was asked if appellant had made a statement on January 10, counsel for appellant objected upon the ground that the purported confession to which the witness was about to testify had not been freely and voluntarily given, and made an offer of proof that he “. . . would like to show by other witnesses that this was not a free and voluntary statement.” The court, in overruling the objection, stated: “I will permit you at this time to take the witness on
 
 voir dire
 
 examination to establish that point. If you do not desire to do it in that manner I will permit you to call any witness when the prosecution has rested to produce such evidence as you think is material to this point.” The witness then testified that on January 10 the appellant stated that she desired to tell the truth; that the statement she had given on January 7 was not the truth; that she and her husband had decided on that day that it would be better for him to take the blame; that she now desired to share in the blame; that on the morning of the beating she herself had spanked Sandra with a belt for approximately five or ten minutes before taking her to Claude who was then in the living room; that she struck Sandra with a switch; and that while the child was in the shower she had also struck her with a belt. The witness Nolan also testified that later that same day Claude, in the presence of appellant, stated that the true story was substantially as his wife had related it. Appellant made no reply to this statement by Claude. As its final witness the prosecution called the defendants’ 6-year-old son who testified on direct examination that
 
 *587
 
 he saw his mother “take a switch” to Sandra, but on cross-examination he stated his mother merely took the switch and “held it up in her right hand.”
 

 Appellant did not take the stand to testify. Her only defense consisted of the testimony of two police officers who stated that during the several days she was being held for questioning by the authorities there were available certain justice courts before which she could have been taken for arraignment.
 

 Claude, however, did testify in his own behalf. He stated that on the morning of the crime he had been sleeping on a couch in the living room; that he was awakened by his wife who told him that Sandra had misbehaved at the table; that his wife was spanking Sandra and asked him to correct the child; that he spanked Sandra; and that his wife then took Sandra into the shower and thereafter made a pallet for her on the floor. He further testified that he had arranged with his wife to take full blame for Sandra’s death because he wanted to protect his wife and make it possible for her to stay with the other children. He explained the unduly severe beating he had given Sandra by saying that “. . . she was extremely disobedient. And I also believed she was possessed of the Devil because she was not like the other children at all. She was extremely disobedient. And God also commanded us to correct children in this manner. . . . She had started sassing her mother. And like I said before, I live for the Bible and try to live for the Bible to the best of my ability. And God said to correct children in that manner.”
 

 On cross-examination he first testified that his wife had “spanked” Sandra in the kitchen; and then said, “She might not have been spanking her, but she was talking loud to her in the kitchen ...” He testified that appellant had the strap with her, but that he did not see her hit the child, “. . . only assumed she spanked her in the kitchen because of the loud talk between them . . .” In answer to questions put to him by the district attorney he testified that when his wife first brought the child to him there were no welts on her body or blood on her T-shirt. Afterwards he contradicted himself by stating, “Seems to me like there might have been some of it.” Again, he testified that he had taken the belt away from appellant in the bathroom but was evasive about whether or not she had actually struck Sandra while giving her a shower. He stated finally, “I only seen her strike her maybe two or three licks.” When asked if it was the belt he had previously used
 
 *588
 
 on Sandra, Claude said: “Something similar to that. I wouldn’t say whether it was it or not.”
 

 Appellant contends that it was prejudicial error to permit the introduction of her purported confession into evidence without first allowing her an opportunity to overcome the prosecution’s prima facie showing that such confession was freely and voluntarily made. We believe that her contention is meritorious. It has long been the rule that when a confession is presented against a defendant who offers to prove that it was not free and voluntary, “. . . it is error to receive the confession without first hearing the proof offered and ruling upon the competency of the confession as evidence against the party making it.”
 
 (People
 
 v.
 
 Gibson,
 
 28 Cal.App. 334 [152 P. 316];
 
 People
 
 v.
 
 Reed,
 
 68 Cal.App. 19 [228 P. 361];
 
 People
 
 v.
 
 Columbus,
 
 49 Cal.App. 761 [194 P. 288]; 3 Wigmore on Evidence, § 861, p. 348; see also
 
 People
 
 v.
 
 Gonzales,
 
 24 Cal.2d 870 [151 P.2d 251], where the procedural steps in this regard are set forth with particularity.)
 

 From the summary of the record heretofore set forth, there can be no question that the trial court failed to follow the steps as outlined in the Gonzales case, that is, when the confession was offered it was “. . . incumbent on the prosecution to lay the foundation for its introduction by preliminary proof showing that it was freely and voluntarily made. [Citations.] Before the confession is received, however, the defendant if he requests it must be accorded the opportunity to introduce evidence to overcome the prima facie showing, and if incrimination is dependent upon the confession a refusal of the court to permit such opportunity may constitute prejudicial error. [Citations.] It is the function of the court in the first instance to resolve any conflict in the evidence on the subject [citations], and if the court concludes that the confession was not free and voluntary it has the power and is in duty bound to withhold it from the jury’s consideration. However, if there is evidence that the confession was free and voluntary, it is within the court’s discretion to permit it to be read to the jury, and to submit to the jury for its determination the question whether under all the circumstances the confession was made freely and voluntarily. [Citations.] In such a case the court passes preliminarily on the question of the voluntary nature of the confession and its admissibility and although it may determine that the confession is voluntary and admissible, its ruling is not binding on the jury; and it is for that body ‘to determine in the last
 
 *589
 
 analysis whether a confession is freely and voluntarily made. ’ [Citations.] The jury determines the issue of the nature of the confession, that is, whether it is voluntary or involuntary, on all of the evidence on the issue; and the court is not required to receive evidence out of the hearing of the jury for the purpose of determining preliminarily the question of admissibility. [Citations.] ...”
 
 People
 
 v.
 
 Gonzales, supra,
 
 pp. 876-877; see also
 
 People
 
 v.
 
 Appleton,
 
 152 Cal.App.2d 240 [313 P.2d 154].)
 

 Obviously the trial court erred in refusing appellant’s request to introduce evidence to overcome the prima facie showing made by the prosecution that her confession was free and voluntary. It is not denied that appellant was interrogated often during the four days she was detained, nor is it denied that she was not brought before a magistrate until after the purported confession of January 10 had been made. Her confession, as she contends, may well have been the product of psychological coercion resulting from prolonged questioning. It was obtained while she was being illegally held in violation of section 825 of the Penal Code which requires that a defendant be brought before a magistrate within 48 hours after his arrest. While that fact alone would not render the confession inadmissible as a matter of law, it was an important factor to be considered in determining whether or not her statement of January 10 was voluntary.
 
 (Rogers
 
 v.
 
 Superior Court,
 
 46 Cal.2d 3 [291 P.2d 929].) Furthermore, there may have been other reasons why the confession was involuntary. But whatever the reason, appellant had the right to introduce evidence on any matter material to the issue of the voluntary nature of the confession independent of the question of her innocence or guilt. Certainly no citation of authority is necessary to substantiate the rule that she could not be compelled to testify against herself in order to establish the involuntariness of her confession. Yet that is precisely the end result of the trial court’s ruling. We find nothing in the case of
 
 People
 
 v.
 
 Appleton, supra,
 
 upon which the prosecution strongly relies, to support its contention that although the court erred, its error was not prejudicial to appellant. In that case the defendant testified fully concerning the circumstances surrounding the commission of the offense and in effect admitted that his confession was free and voluntary. In light of such a record this court was necessarily compelled to hold that the trial court’s error in refusing him permission to
 
 *590
 
 introduce evidence to the contrary on
 
 voir dire
 
 was not prejudicial.
 

 In the present case, except for appellant’s purported confession, the only evidence tending to connect her with the commission of the offense charged was the testimony of the couple’s 6-year-old son and that given by Claude while testifying in his own behalf. Contrary to appellant’s contention, we are convinced that the boy was properly allowed to testify. Even if we assume, but without deciding, that the evidence of father and son, taken together, would be legally sufficient to sustain the conviction, such assumption does not dispose of the problem before us. The question presented to this court for determination is not merely the sufficiency of the evidence, but rather whether or not, when the record is considered as a whole, the error in so admitting the testimony of Mrs. Nolan so prejudiced appellant’s rights as to make a different verdict not improbable. (Cal. Const., art. VI, § 4%.) Considering the youth of the boy and his contradictory and rather vague testimony, and the testimony of Claude which was at once contradictory in itself, contrary in many respects to his extrajudicial statements, indicative of a distorted mentality, and the highly inflammatory nature of the evidence generally, we cannot say that had the testimony of Mrs. Nolan been excluded, a different verdict might not have resulted.
 
 (People
 
 v.
 
 Reed, supra,
 
 68 Cal.App. 19;
 
 People
 
 v.
 
 Columbus, supra,
 
 49 Cal.App. 761;
 
 People
 
 v.
 
 Gibson, supra,
 
 28 Cal.App. 334.)
 

 In view of this conclusion, we deem it unnecessary to discuss appellant’s other contentions, each of which we believe to be without merit.
 

 The judgment is reversed.
 

 Van Dyke, P. J., and Sehottky, J., concurred.
 

 A petition for a rehearing was denied May 3, 1960, and respondent’s petition for a hearing by the Supreme Court was denied June 2, 1960. Schauer, J., Me Comb, J., and White, J., were of the opinion that the petition should be granted.