[No. A040413. First Dist., Div. Two. Sept. 30, 1988.]

In re JUMA P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JUMA P., Defendant and Appellant.

**COUNSEL**

Stephen Selwyn Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Gerald Engler and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POLLAK, J.\***—Juma P., a minor, appeals from a judgment making him a ward of the court under section 602 of the Welfare and Institutions Code,

---

\* Assigned by the Chairperson of the Judicial Council.

based on several sustained petitions, and committing him to confinement in a county-approved facility for a maximum of seven years.[1] He contends on appeal that the trial court erroneously denied his request for a determination of the voluntariness of his confession which was admitted into evidence at the hearing on one of the sustained petitions. We agree and order a limited remand with directions to the trial court to hold a hearing to determine whether the confession was voluntarily made.

The issues which Juma raises on appeal pertain only to the hearing on a petition filed August 28, 1987, alleging that he had committed three felony burglaries. Therefore, the only relevant factual background is the evidence adduced and the proceedings which occurred at that hearing.

Officer Joseph Smith of the Hayward Police Department testified that on March 18, 1987, at approximately 5 p.m., he took possession of a television and a sleeping bag from three minors on a street in Oakland. At the hearing, Smith identified Juma as one of those minors. The television and sleeping bag were later identified, in part through the serial number of the television, as property taken in a burglary being investigated by Detective David Pilkington of the Hayward Police Department.

Thereafter Pilkington contacted Susan Jones, Juma's aunt[2] with whom he was living, and she agreed to have Pilkington pick up Juma at her residence and transport him to the police station for an interview. Pilkington testified that after transporting Juma to his office on July 2, 1987, he read Juma his *Miranda* rights from a standard form and had Juma sign the form. Juma then gave Pilkington a statement admitting the three burglaries with which he was later charged. Juma signed the statement. Pilkington testified that he at no time made any threats or promises to Juma in connection with the burglaries or the statement. In the statement, which was admitted into evidence over defense objection, Juma admitted participating in the three burglaries with two other minors. Pilkington later recovered from Susan Jones's residence two computers and some miscellaneous computer-related equipment taken in the burglaries. He recovered other property taken in the burglaries from the other two minors.

Detective Tom Perry accompanied Pilkington when he went to pick up Juma at his aunt's house. Perry testified that he did not at any point hear any promises made by Pilkington that if the stolen property was returned, Juma would be treated with some kind of leniency.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The record is unclear as to whether Susan Jones is Juma's aunt or just a friend. Both briefs on appeal, however, refer to her as Juma's aunt, and we shall do likewise.

Susan Jones testified on behalf of Juma. She stated that when Detective Pilkington came to her house to pick up Juma he told her that if Juma made a statement and returned the items he would not be in any trouble. She also testified that Pilkington told her that the people from whom the property had been stolen did not want to press charges if their items were returned. She stated that Juma was present when these statements were made by Pilkington.

Jones also testified that she questioned Juma about the burglaries before Pilkington arrived. He told her that he and some other boys had taken some items from one house and that he had a single item, a computer.

When the prosecutor first sought to introduce Juma's statement, on September 22, 1987, during the testimony of Detective Pilkington, defense counsel stated: "I would like to voir dire on the voluntariness and I would like to present evidence on the *Miranda* question."[3] The court then stated: "All right. Certainly you may voir dire right now." Counsel then questioned Pilkington about his conversation with Juma, and Pilkington stated that he had made no promises whatsoever to Juma. Her examination of Pilkington was still in progress when the court adjourned the proceedings for the day, shortly before 5 p.m.

Defense counsel resumed her examination of Pilkington the following morning. Pilkington denied telling Juma or his aunt that Juma would not be in any trouble if he made a statement and returned the stolen items, or telling them that the people from whom the items were taken did not want to press charges as long as the items were returned. When defense counsel concluded her questioning of Pilkington, the court asked the prosecutor: "Anything further on the motion?" The prosecutor then asked Pilkington a few more questions on this subject. When that examination concluded, defense counsel stated: "Now I would like a continuance so that I can present evidence on the voluntariness issue." The prosecutor indicated that she had no objection. The court stated: "My understanding is the request for the continuance is to get another witness available who's not available today for the defense; is that correct?" Defense counsel replied affirmatively and the matter was continued to October 5, 1987.

On the morning of October 5, there was no immediate discussion of the issue of the voluntariness of Juma's statement. The prosecutor called her

---

[3] Defense counsel in some instances spoke only of a "Miranda" issue. It is apparent from the reporter's transcript, however, that both the court and the prosecutor understood these references to include a challenge to the voluntariness of Juma's confession. As Juma's appellate counsel has recognized, the voluntariness issue is actually one which is properly described as arising under *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], rather than under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. (See the discussion *infra,* at pp. 1234-1235.)

next witness, Detective Perry. At the conclusion of his testimony the prosecutor stated: "I have no further witnesses on admissibility of [Juma's] statement . . . ." The court responded: "I don't know what you're talking about." The prosecutor then indicated her understanding that there was a pending motion to introduce Juma's statement into evidence. The court replied: "It's no pending motion. She just asked to voir dire and she voir dired Pilkington. I don't have any motion before me." The prosecutor then recalled Detective Pilkington.

When the prosecutor attempted to question Pilkington about the statement Juma had made to him, defense counsel objected as follows: "If this is now going to the substance of the statement, I object to any testimony about the substance of the statement. I move to suppress the statement based on violation of *Miranda*, and I'm prepared to present evidence to the Court on that issue." The court then stated: "I don't have any suppression motion before me. Did you file one?" Counsel replied: "I didn't file papers, Your Honor, but at the last hearing I indicated to the Court that I had evidence to present on the voluntariness issue for the *Miranda* violation." She informed the court that she had present in court the witness (Susan Jones) whom she had referred to in her request for a continuance on September 23, 1987. The court indicated its view that a formal suppression motion was necessary to the raising of this issue.[4] The court then overruled the objection and admitted the statement into evidence. Pilkington testified about the substance of the statement subject to a continuing objection "based on the voluntariness issue."

When Susan Jones was called to testify for the defense, the prosecutor objected to questions seeking to elicit testimony that Pilkington had promised Juma leniency in exchange for his cooperation on the ground that counsel was again trying to attack the statement as not voluntary. The court stated: "I think that's what she's trying to do, too. I recognize that she can make a motion to strike [ ] something but there's still no suppression motion before this court. And my understanding of the law is that that's the only way you suppress, [ ] you make a motion to suppress in advance or [ ] you make a motion to suppress on one of the appropriate grounds during the course of the hearing. None of that has been done at this stage." Defense counsel responded: "[I]f none of my objections in the past have been construed as a motion to suppress, I will make that motion to suppress [now] and I will be moving to strike the statement after the testimony of the

---

[4] During this discussion the court stated: "Not only do I have no papers, there's no formal suppression motion been made to me that my notes reflect," and asked of defense counsel, "Have you ever made a suppression motion in this case?" Counsel replied that while she had not made a suppression motion, she had objected to the admission of the statement, which she thought was equivalent.

defense." The court asked the prosecutor: "What's your reaction to the motion to suppress?" She replied that the motion was untimely and the court then denied the motion.[5] The court did, however, allow Jones's testimony as to statements made by Pilkington for the limited purpose of attacking his general credibility.

 "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, [citation], and even though there is ample evidence aside from the confession to support the conviction. [Citations.] Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."[6] (*Jackson* v. *Denno, supra,* 378 U.S. 368, 376-377 [12 L.Ed.2d 908, 915-916].) A confession elicited by promises of benefit or leniency is deemed involuntary and inadmissible. (*People* v. *Carr* (1972) 8 Cal.3d 287, 296 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Johnson* (1969) 70 Cal.2d 469, 478-479 [74 Cal.Rptr. 889, 450 P.2d 265]; *People* v. *Hill* (1967) 66 Cal.2d 536, 549 [58 Cal.Rptr. 340, 426 P.2d 908], cert. den. (1968) 390 U.S. 911; *In re J. Clyde K.* (1987) 192 Cal.App.3d 710, 720 [237 Cal.Rptr. 550]; accord, *Lynumn* v. *Illinois* (1963) 372 U.S. 528, 534 [9 L.Ed.2d 922, 926, 83 S.Ct. 917].) "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." (*Sims* v. *Georgia* (1967) 385 U.S. 538, 544 [17 L.Ed.2d 593, 598, 87 S.Ct. 639]; accord, *People* v. *Rowe* (1972) 22 Cal.App.3d 1023, 1029 [99 Cal.Rptr. 816].)

In *People* v. *Rowe,* the trial court refused to permit the defendant to present evidence that he was induced to make confessions based upon promises of leniency. The Court of Appeal held: "[T]he trial judge in this case must be deemed to have committed grave error in refusing to permit the defense to rebut the prosecutions's prima facie showing of voluntariness." (*People* v. *Rowe, supra,* 22 Cal.App.3d 1023, 1031.) Similarly, in *People* v. *James* (1984) 157 Cal.App.3d 381 [203 Cal.Rptr. 716], the court held that it was error to admit the defendant's incriminating admission without resolution of the defendant's claim that the statement was

---

[5] The reporter's transcript contains no further mention of any motion to strike the statement.

[6] The California Supreme Court recently has reaffirmed the rule in this state that the burden is on the prosecution to prove the voluntariness of a defendant's confession or incriminating admission beyond a reasonable doubt. (*People* v. *Belmontes* (1988) 45 Cal.3d 744, 773 [248 Cal.Rptr. 126, 755 P.2d 310].)

involuntary: "Defendant was entitled to a factual determination of the issue of voluntariness and the trial court was under a duty to decide it before the statement could be admitted in evidence." (*Id.,* at p. 386, citing *Jackson* v. *Denno, supra,* 378 U.S. 368, 378-379 [12 L.Ed.2d 908, 916-917].)

Juma contends that his trial counsel adequately asserted an objection to the admission of his statement on the ground that it was involuntary, and that the trial court erred in refusing to take evidence and make a factual determination of the voluntariness of his confession. The People agree, as do we, that trial counsel properly objected to the admission of the statement.[7] The People also properly concede that the trial court erred in failing to make a ruling on the voluntariness of Juma's statement. They contend, however, that this error was harmless under the standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Id.,* at p. 24 [17 L.Ed.2d at pp. 710-711].)

Before assessing the effect of the trial court's error, it may be helpful to review the proper procedure for counsel to raise and the court to rule upon a question of the voluntariness of a confession or admission. The trial court here was incorrect in its view that the filing or making of a "formal suppression motion" was necessary for defense counsel to raise the issue of the voluntariness of the confession. We assume that the court was referring to a pretrial motion to suppress evidence pursuant to section 700.1, which is "the juvenile court counterpart to the adult Penal Code section 1538.5 motion . . . ." (See *In re Steven H.* (1982) 130 Cal.App.3d 449, 453 [181 Cal.Rptr. 719].) A claim that a confession should be suppressed or excluded because obtained in violation of a defendant's Fifth Amendment rights "cannot be the basis of a section 1538.5 motion, since section 1538.5 is limited to search and seizure issues." (*People* v. *Campa* (1984) 36 Cal.3d 870, 885 [206 Cal.Rptr. 114, 686 P.2d 634].) Section 1538.5 "provides for a motion to suppress only when there has been a search and seizure. [Citation.]" (*People* v. *Superior Court* (*Zolnay*) (1975) 15 Cal.3d 729, 733 [125 Cal.Rptr. 798, 542 P.2d 1390], cert. den. (1976) 429 U.S. 816 [50 L.Ed.2d 76, 97 S.Ct. 58].) "Thus, that statute can be properly employed only to shield a defendant from Fourth Amendment violations; it has no part in protecting against Fifth Amendment infringements . . . ." (*Id.,* at p. 734.)

There are two proper ways that a defendant may seek to exclude from evidence a confession or admission which he contends was obtained in violation of his Fifth Amendment rights.

---

[7] Our determination that Juma's trial counsel properly objected to the admission of his statement on the basis that it was involuntary renders moot his alternative contention on appeal that any failure properly to object constituted ineffective assistance of counsel.

The first, which is used rather infrequently, is a pretrial motion to suppress made under the common law rather than under any statutory authority. "Courts of this state have long recognized the existence of a common law motion to suppress illegally obtained statements. [Citations.] However, this common law motion differs from a section 1538.5 motion in its effect in subsequent proceedings. . . . '[A]ny ruling on the admissibility of an admission or confession made at such a motion is not binding on the court if the People again offer the evidence at the trial.' [Citations.]" (*People v. Superior Court (Zolnay), supra,* 15 Cal.3d 729, 734; accord, *People v. Campa, supra,* 36 Cal.3d 870, 885-886.)

Alternatively, the more common practice is for counsel simply to object to the admission of a statement or confession at trial, as Juma's trial counsel did here, without making a motion. ██ █ Evidence Code sections 400, 402 and 405 provide a procedure for determining the voluntariness of a confession or admission as a "preliminary fact."[8] (*People v. Culver, supra,* 10 Cal.3d 542, 547-548, fn. 8; *People v. Burton, supra,* 6 Cal.3d 375, 389-390.) ██ Pursuant to section 701, "the rules of evidence established by the Evidence Code and by judicial decision" govern the admission and exclusion of evidence in a juvenile court proceeding. Thus, since the minor did assert a timely objection to the introduction of his statement, the trial court was obligated to rule on the merits of that objection before receiving the statement into evidence.

██ The People contend that the error in failing to rule on the voluntariness of Juma's confession was not prejudicial because the trial court did admit Susan Jones's testimony as relevant to Detective Pilkington's credibility, and argue that the court therefore necessarily found that his testimony was credible and the confession properly obtained.

But the trial court denied what it viewed as a "suppression motion" because it deemed the motion untimely. It seems quite clear that the trial court did not view the voluntariness of the confession as an issue before it. The Supreme Court in *Jackson v. Denno* observed: "Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often

---

[8] In a jury trial, the judge, not the jury, determines the voluntariness of a confession or admission. (*People v. Burton* (1971) 6 Cal.3d 375, 389 [99 Cal.Rptr. 1, 491 P.2d 793].) Pursuant to Evidence Code section 402, subdivision (b), the court must determine the question of the admissibility of a confession or admission out of the presence of the jury if any party so requests. (*People v. Culver* (1973) 10 Cal.3d 542, 547-548, fn. 8 [111 Cal.Rptr. 183, 516 P.2d 887].)

determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely . . . ." (*Jackson* v. *Denno, supra,* 378 U.S. 368, 390 [12 L.Ed.2d 908, 923].) The court there went on to state: "Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court . . . ." (*Id.,* at pp. 390-391 [12 L.Ed.2d at pp. 923-924].) Speculation by this court as to what was or would have been in the trial court's mind would indeed be an inadequate substitute for a determination by the trial court with the "unmistakable clarity" that is required. (See *Sims* v. *Georgia, supra,* 385 U.S. 538, 544 [17 L.Ed.2d 593, 598].) We cannot conclude beyond a reasonable doubt that the trial court would have found the confession voluntary had it ruled upon the issue. (See *Chapman* v. *California, supra,* 386 U.S. 18.)

The People additionally urge that any error was harmless under *Chapman* because other evidence of Juma's guilt was provided by his aunt's testimony that he admitted one burglary to her, and Officer Smith's testimony that Juma was one of the minors carrying away the stolen television. The People misapprehend the applicable standard of review. "The introduction in evidence of a *confession* obtained from the defendant in violation of constitutional guarantees is prejudicial per se and compels reversal *regardless of other evidence of guilt.* (*Jackson* v. *Denno* (1964) 378 U.S. 368, 376 [12 L.Ed.2d 908, 915, 84 S.Ct. 1774, 1 A.L.R.3d 1205]; *Rogers* v. *Richmond* (1961) 365 U.S. 534 [5 L.Ed.2d 760, 81 S.Ct. 735]; *Payne* v. *Arkansas* (1958) 356 U.S. 560, 568 [2 L.Ed.2d 975, 981, 78 S.Ct. 844]; *People* v. *Rollins* (1967) 65 Cal.2d 681, 692-693 [56 Cal.Rptr. 293, 423 P.2d 221]; *People* v. *Schader* (1965) 62 Cal.2d 716, 728-731 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Dorado* (1965) 62 Cal.2d 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361], and cases cited.)" (*People* v. *Powell* (1967) 67 Cal.2d 32, 51-52 [59 Cal.Rptr. 817, 429 P.2d 137]; second italics added, parallel citations omitted.) Thus, if it is determined on remand that Juma's confession was not voluntary, the judgment herein cannot stand.[9]

The judgment is reversed and the matter is remanded to the trial court with directions to hold a hearing to determine the voluntariness of Juma's confession. If it is determined that the confession was voluntarily made, the judgment herein shall be reinstated. If it is determined that the confession

---

[9] The People also argue that there is no basis for disturbing the disposition of the trial court because no challenge has been raised on appeal to two other sustained petitions upon which the single disposition was based. We cannot know, however, that the trial court's disposition would be the same on the other two petitions if made without reference to the sustained August 28 petition charging three felony burglaries.

was not voluntarily made, the order sustaining the juvenile court's jurisdiction over the August 28, 1987, petition shall be vacated, without prejudice to retrying the three burglary counts without use of the confession, failing which the petition filed August 28, 1987, shall be dismissed. (See *Jackson* v. *Denno, supra,* 378 U.S. 368, 395-396 [12 L.Ed.2d 908, 926-927]; *People* v. *Collins* (1986) 42 Cal.3d 378, 389-395 [228 Cal.Rptr. 899, 722 P.2d 173].)

Kline, P. J., and Smith, J., concurred.