[No. F010579. Fifth Dist. Feb. 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY KENT STEPHENS, Defendant and Appellant.

577

**COUNSEL**

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, Mark A. Rakich and Michael E. Kilpatrick, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, Joel Carey and Laura Heidt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, J.**—Defendant appeals from judgment following jury trial upon multiple Penal Code[1] violations, contending admission of a statement he made to a detective was contrary to his Fifth and Sixth Amendment rights. He also claims he was improperly convicted of residential robbery and receiving stolen property resulting from the same item of theft. As to the latter claim, we determine reversal of the "receiving" conviction alone to be the appropriate remedy. Based upon our discussion that follows, we affirm as to all other contentions.

The charges arose out of three incidents: December 17, 1987—two counts (counts I and II) of violation of sections 211 and 212.5, subdivision (a) (residential robbery), with allegations that a principal was armed within the meaning of section 12022, subdivision (a); January 9, 1988, one count (count III) of violation of 496 (receiving stolen property taken from first robbery victim) and one count (count V) of violation of section 488 (petty theft); and February 14, 1988—one count (count IV) of violation of section 459 (residential burglary). Additionally, defendant faced further consequences for prior convictions: two separate prior prison terms served under section 667.5, subdivision (b) and one serious-felony conviction under section 667.

Defendant made a motion *in limine,* before the trial judge alone, to exclude any reference to his statement in question. After hearing evidence and argument on the subject, the court denied the motion. The matter then proceeded to jury trial, at the conclusion of which defendant was convicted of all counts and further allegations.

Defendant was sentenced to state prison for an aggregate term of fifteen years and eight months as follows: upper term of six years for count I, with one additional year for the arming allegation; consecutive term of one year and four months for each of counts II and IV; one additional year for a prior prison term; and five additional years for the prior serious felony conviction. Sentence on count III, receiving stolen property, was stayed pursuant to section 654. The second section 667.5, subdivision (b) enhance-

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

ment was not imposed because it arose from the same conviction as the section 667 enhancement. Count V, a misdemeanor, resulted in a concurrent sentence.

## FACTS

On December 17, 1987, Gregory Kephart and his girlfriend, Kimberly Riddle, were at his residence sleeping when Riddle was awakened by knocking on the front door. Kephart went to the front door, where a man informed him that his car had broken down and that he needed to use the telephone to call his wife. Kephart admitted the man, whom he identified as the defendant, into the apartment. As the defendant walked across the apartment, a second man burst in through the door. Kephart and Riddle were tied up and held at gunpoint for approximately an hour and a half while the two men searched the apartment.

The men took Kephart's car keys, his car, his stereo, his billfold and a watch. That night, Riddle gave the gunman her jewelry. She was unable to identify either of the two men in the apartment. She got a better look at the man with the gun than the one without the gun, and only saw the man without the gun from the side as he was walking past the bedroom door. Subsequently, in January Kephart was contacted by the sheriff's department regarding the use of his purloined driver's license by a man in a red Datsun who had gotten gasoline at a Beacon station.

On April 26, 1988, Detective Martin Williamson had a conversation with defendant, who was then in custody; defendant said he was not the one with the gun.

Deborah Fletcher, an employee at a Beacon gas station in Bakersfield, identified defendant as the man driving a red Datsun who came into the station on January 9, 1988, and pumped $9.62 worth of gasoline. He then told her that he had forgotten his wallet and gave her Kephart's driver's license number as security, telling her he would return within one hour to pay for the gas. He did not return.

On February 14, 1988, Vickie Goodson was at work when, about 11:15 a.m., she received a telephone call from a neighbor. Upon returning home, she noticed that the back window was pulled out. The house had been burglarized. Two televisions, a microwave oven, a stereo, two drills, a circular saw, toilet articles, jewelry, clothing and two pairs of boots were missing.

Richard Stuck, Goodson's next-door neighbor, identified defendant as the man he saw carrying the material out of the Goodson home. He immediately recognized defendant at a physical lineup.

Defendant's defense was alibi. He testified that on February 13 and 14 he had been camping at Whiskey Flats, which is apparently a one-hour drive from Bakersfield. Gerald Hollis testified that he had been with defendant at Whiskey Flats on February 13 and 14 where they had attended a fair. Hollis had made defendant's acquaintance when they were both in jail, Hollis being incarcerated for grand theft, bovine. He testified that defendant had saved his life while he was in prison and that he had not seen defendant since he left prison in 1982 until he ran into him by chance at Whiskey Flats on February 13, 1988.

Regarding the robbery of Riddle and Kephart, defendant also insisted he was not involved but did not have an alibi that evening. He admitted that he had taken the gas from the Beacon station, using Kephart's driver's license, but insisted that he had received the driver's license from a man named Scott. Defendant did not know of Scott's whereabouts at the time of trial.

DISCUSSION

I.

*Defendant's Statement*

Defendant argues that the admission of Williamson's testimony was violative of both defendant's Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel.

While he was incarcerated pending trial, defendant called Detective Williamson's office and left a message that he wished to speak to the detective. Defendant had been previously advised of and had invoked his *Miranda* rights,[2] and counsel had been appointed for him. In response to the message, Williamson went to the Lerdo detention facility. Only Williamson and defendant were present. The conversation began with defendant questioning why the district attorney was offering him 16 years. Williamson essentially explained he thought it was due to the seriousness of the residential robbery charges and defendant's prior record. He then told defendant he did not want him to say anything without defendant's attorney being present, and

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

that if he wanted to talk about the case he should first contact his attorney. Defendant told Williamson he was in the process of firing his attorney. Evidently at this point, defendant commented he was not the one with the gun during the "robbery."

Williamson then informed defendant that if the defendant were to identify a second suspect, Williamson would have to document the source of the information and write a report on it. The interview was then terminated.

Defendant admitted that Williamson had told him not to say anything without his attorney being present but denied that he had told Williamson that he was not the one with the gun during the robbery. He admitted that a similar phrase might have been used in "the hypothetical question I gave him."

## A. *Fifth Amendment Privilege Against Self-incrimination*

Statements resulting from a "custodial interrogation" are inadmissible in the absence of a *Miranda* warning. Custodial interrogation is defined in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda* v. *Arizona, supra*, 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) More recently, *Edwards* v. *Arizona* (1981) 451 U.S. 477, 485-487 [68 L.Ed.2d 378, 386-388, 101 S.Ct. 1880], held that even though an accused may waive his previously invoked right, any custodial interrogation by law enforcement must be preceded by a knowing, intelligent and voluntary waiver of the *Miranda* rights.

The definition of interrogation was expanded in *Rhode Island* v. *Innis* (1980) 446 U.S. 291, 301-302 [64 L.Ed.2d 297, 308, 100 S.Ct. 1682]. Therein the court held that not only express questioning but also any words or actions on the part of the police likely to elicit an incriminating response from the suspect are prohibited interrogation. The court noted that the definition focuses on the perceptions of the suspect rather than on the intent of the police. "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." (*Id.* at p. 301 [64 L.Ed.2d at p. 308].) Arguing therefrom defendant notes, "The statements at issue here were the result of interrogation by Deputy Williamson."

However, the trial court found otherwise; it found that the defendant was not interrogated by Officer Williamson and that: "[W]hatever communication was done here was voluntary.

"`. . . . . . . . . . . . . . . . . . . .

"THE COURT: It was completely voluntary. The only issue is whether it's excludable because the defendant was represented by counsel and counsel was not notified of the contact that was made by the officer. That's the only issue I see.

"`. . . . . . . . . . . . . . . . . . . .

"THE COURT: It's my view that the communication, the contact is not absolutely prohibited by the attorney-client relationship in view of the facts of this case, that the defendant himself voluntarily requested the contact, and number two, since the officer did not interrogate the defendant, Miranda is not an issue, and since the information given by the defendant to the officer is voluntary, I hold that it need not be excluded, . . ."

 The conclusion reached by the trial court was reasonable, especially in light of the context of the discussion resulting in defendant's statement. The overriding concern of defendant seemed to be that he wanted a better plea offer. He evidently thought an offer of a 16-year term was excessive because he was "not the one with the gun." Defendant obviously did not perceive that he was being interrogated but, rather, wanted to voluntarily assert a reason for leniency. This was his apparent purpose, and nothing said by Williamson served to create any false expectation that might have tricked him into making an unwitting statement. To the contrary, Williamson warned him to utilize his counsel.

 The federal Constitution requires only that the prosecution prove voluntariness of a defendant's confession by a preponderance of the evidence. (*Lego* v. *Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 627, 92 S.Ct. 619].) *People* v. *Markham* (1989) 49 Cal.3d 63 [260 Cal.Rptr. 273, 775 P.2d 1042] held that article I, section 28, subdivision (d) of the California Constitution makes this federal standard the applicable rule in California. "The Constitution of the United States requires no more than that the voluntariness of confessions or admissions be proved by a preponderance of the evidence at trial. [Citation.] Section 28(d) establishes that standard as the rule in California." (*People* v. *Markham, supra,* at p. 71.) This same standard applies to *Miranda* considerations. (*Id.* at p. 67, fn. 3.)

 The preponderance of the evidence here supported the trial court's finding that the statement was voluntary and not the result of interrogation; it was not necessary for defendant to be readvised of and to waive his

*Miranda* rights. ■ A trial court's ruling on a *Miranda* issue will not be set aside unless it is " *'palpably erroneous.'* " (*People* v. *Siripongs* (1988) 45 Cal.3d 548, 575 [247 Cal.Rptr. 729, 754 P.2d 1306], cert. den. 488 U.S. 1019 [102 L.Ed.2d 810, 109 S.Ct. 820].) Clearly, no such error existed here.

### B. *Sixth Amendment Right to Counsel*

Defendant notes that once the Sixth Amendment right to counsel has attached and has been invoked, as occurred here, the accused cannot waive that right when the police initiate contact, citing *Michigan* v. *Jackson* (1986) 475 U.S. 625 [89 L.Ed.2d 631, 106 S.Ct. 1404]. However, it is undisputed here that the police did not initiate the contact; rather defendant specifically called Williamson's office and asked to speak to him personally.

The Supreme Court in *Edwards* v. *Arizona, supra*, 451 U.S. 477, held that an accused should not be questioned after invoking his right to counsel unless the accused initiates "further communication, exchanges, or conversations with the police." (*Id.* at pp. 484-485 [68 L.Ed.2d at p. 386].)

A recent California case went one step further in holding, "[t]he State is not required under either *Edwards* v. *Arizona, supra*, or *Michigan* v. *Jackson, supra*, to contact a defendant's attorney of record prior to questioning where the defendant has initiated 'interrogation' and waived his right to counsel following *Miranda* warnings." (*People* v. *Sultana* (1988) 204 Cal.App.3d 511, 521 [251 Cal.Rptr. 115], cert. den. 489 U.S. 1057 [103 L.Ed.2d 591, 109 S.Ct. 1323].)

Defendant recognizes the holding in *People* v. *Sultana,* but argues it is inapplicable here because the defendant there was advised of his *Miranda* rights at the outset of the interview and the interviewer obtained a waiver of the defendant's *Miranda* rights.

The trial court noted that while Williamson did not readvise defendant of his *Miranda* rights before engaging in the conversation that defendant had initiated, Detective Williamson did tell defendant that he should not make any statement in the absence of his attorney. Since at the time of the interview defendant was seeking to discharge his attorney, he argues that "without *Miranda* warnings, [defendant] may well have believed that he had nobody but Williamson to turn to." However, defendant admitted that he informed Williamson he was in the process of hiring a private attorney prior to making the statement in question. There is no dispute that on an earlier occasion, defendant had been apprised of his *Miranda* rights and had invoked them.

The People have cited *Patterson* v. *Illinois* (1988) 487 U.S. 285 [101 L.Ed.2d 261, 108 S.Ct. 2389] as "instructive," since that court noted, in the context of a waiver of Sixth Amendment rights, that the key inquiry must be: "Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel?" (487 U.S. at pp. 292-293 [101 L.Ed.2d at p. 272, 108 S.Ct. at p. 2395].) Defendant argues that even if the *Patterson* test is controlling, it is not met here. He claims it does not apply because the defendant in *Patterson* had not invoked his right to counsel. This claim is questionable since a represented defendant would more likely be better informed of the risk of not having counsel present.

An even better reason to distinguish *Patterson* is the presence there of an interrogation. That difference would, if anything, make the test to apply here less stringent. As we have noted, the trial court found that the statements made by defendant were voluntary and were "not in response to any interrogation by the officer" and "the officer didn't go there to interrogate him, . . . The officer went there to find out what he wanted. And the officer did not interrogate him, . . ." "But the voluntariness of a confession is not really the issue in a Sixth Amendment right to counsel case. . . . The voluntariness at issue here is that of the defendant's waiver of his right to have counsel present at interrogation, not the voluntariness of various statements made." (*People* v. *Dickson* (1985) 167 Cal.App.3d 1047, 1056 [213 Cal.Rptr. 722].) Yet again the discussion focuses on counsel at "interrogation," while the court here found there was no interrogation.

In *People* v. *Dickson, supra*, 167 Cal.App.3d 1047, we held that a defendant represented by counsel can waive the right to have counsel present during questioning under certain circumstances. In that case those circumstances were: Dickson had sent several messages to a Detective Jones that he wanted to talk to Jones; Dickson was brought to police headquarters where Jones gave him his *Miranda* warning, reminded him that his attorney did not want him to talk to the police and told him he was willing to go along with the attorney's advice; Dickson then informed Jones that he had told his attorney that he was going to talk to the police and proceeded to do so.

We noted: "Although appellant presents abundant authority for the proposition that the Sixth Amendment compels exclusion of statements elicited from a charged defendant in *government initiated* interrogation in the absence of counsel, no authority is cited for the crucial proposition—

that a defendant's repeated, independently motivated requests for an opportunity to speak to police investigators must be ignored because the defendant has counsel even when the defendant knows that his counsel is opposed to his speaking to the officers and chooses to ignore counsel's advice." (*People* v. *Dickson, supra*, 167 Cal.App.3d at p. 1053.)

In *Wyrick* v. *Fields* (1982) 459 U.S. 42 [74 L.Ed.2d 214, 103 S.Ct. 394] the defendant, with the advice and consent of counsel, agreed to participate in a polygraph examination. Counsel was not present at the time of the examination; during questioning associated with the examination, defendant made incriminating statements. The United States Supreme Court held that the state court improperly ruled the statements inadmissible since the defendant had waived his Fifth Amendment rights prior to the examination and after consultation with his attorney. Justice Marshall's dissent would allow a state to establish a waiver of the Sixth Amendment right to counsel by proving " ' "an intentional relinquishment or abandonment" ' " of the right to have counsel present." (*Id.* at p. 54 [74 L.Ed.2d at p. 223], dis. opn. of Marshall, J.)

Defendant argues: "[I]n order to obtain a valid waiver of Sixth Amendment rights after adversarial proceedings have commenced, and after the right to counsel has been invoked, courts should demand that, at a minimum, the record reflect that counsel is aware of the intended contact between the state and the accused, and has had the opportunity to consult with the accused." A critical flaw in this suggestion is its casting the right to the attorney rather than to the defendant. While the defendant should have the opportunity to consult his counsel, it cannot be said that the attorney must have the right to consult with his client.

On the facts of the *Dickson* case, we found "the accused must be deemed to have made a voluntary, knowing and intelligent waiver of his right to have counsel present when he talked to the police." (*People* v. *Dickson, supra*, 167 Cal.App.3d 1047, 1057.) This test is essentially the same as that suggested by Justice Marshall in *Wyrick* v. *Fields, supra*, 459 U.S. 42. The facts here may not be as compelling since Williamson did not Mirandize defendant nor did he attempt to contact defendant's attorney. ■ Yet defendant, previously Mirandized and possessing counsel, still independently and voluntarily contacted the detective; after he was advised by the detective not to make a statement without his attorney present, he nonetheless proceeded to make a statement voluntarily without any interrogation or prompting whatsoever. The court could reasonably find " ' "an intentional relinquishment or abandonment" ' " (*Wyrick* v. *Fields, supra*, 459 U.S. at p.

54 [74 L.Ed.2d at p. 223], dis. opn. of Marshall, J.) of the right to have counsel present" under these circumstances.

We note, in passing, that Gregory Kephart identified defendant as the robber without the gun. Kephart's identifications were unambiguous at the photographic lineup, the preliminary hearing, and at trial; while Kimberly Riddle was unable to identify either robber, it was clear from her testimony that she was never able to get a good look at the robber without the gun. ■ Therefore, even assuming that the defendant's statement should not have been presented to the jury, any error in admitting it would have been harmless beyond a reasonable doubt. (*Chapman* v. *California* (1966) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

## II.

### *Stealing and Receiving the Same Property*

The People concede that it was error for the jury to convict defendant of stealing and receiving the same property, that being the driver's license of Gregory Kephart. We find ample support for that concession. The defendant and the People differ however on the appropriate remedy for the error.

Defendant cites *People* v. *Perez* (1974) 40 Cal.App.3d 795, 800 [115 Cal.Rptr. 405], in support of the proposition that when the defendant "cannot be simultaneously guilty of both crimes, both convictions are vulnerable to reversal where the reviewing court cannot ascertain what verdict would have been returned by a properly instructed jury." Defendant argues that the evidence of his guilt on the robbery count was not overwhelming, citing the fact that there was no fingerprint evidence. He ignores the fact, however, that there was a positive identification by one of the victims of the robbery.

*People* v. *Stewart* (1986) 185 Cal.App.3d 197 [229 Cal.Rptr. 445] disagreed with *Perez* as follows: "In our view these authorities misconceive the issue . . . . They approach the issue on the assumption that theft, or a theft-related offense, and receiving stolen property are mutually exclusive offenses. They are not. The rule is that a thief may not be convicted of receiving the property he stole even though he has otherwise committed all of the acts with the requisite knowledge to constitute the offense. The converse is not true. . . . [T]here is nothing inconsistent in finding that an accused has committed acts with the requisite intent and knowledge to constitute both offenses. Consequently, in the absence of an instruction on the question, it is the conviction for theft or a theft-related offense which

has the preclusive effect and not vice versa." (*Stewart, supra*, at pp. 206-207.)

■ The appropriate remedy then is to reverse only count III, the conviction for receiving stolen property, and let stand the conviction for robbery which was supported by substantial evidence.

### DISPOSITION

Defendant's conviction and judgment upon count III (receiving stolen property) is reversed; in all other respects, the judgment is affirmed.

Ardaiz, Acting P. J., and Dibiaso, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 1990. Mosk, J., was of the opinion that the petition should be granted.