Filed 6/10/13  In re Steven P. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re STEVEN P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVEN P.,<br><br>    Defendant and Appellant. | G047292<br><br>(Super. Ct. No. DL034681)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Donna L. Crandall, Judge.  Affirmed in part; reversed in part.

        James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

\*     \*     \*

Steven P. appeals from a judgment after the juvenile court declared him a ward of the court pursuant to Welfare and Institutions Code section 602, and found true the petition's allegations of second degree robbery (Pen. Code, § 211), and receiving stolen property (Pen. Code, § 496, subd. (a)). Steven contends the juvenile court erred by excluding his post-detention statements to police that were consistent with his alibi defense—an argument we reject. Steven also contends the juvenile court erred by sustaining the petition on the receiving stolen property count because he could not be convicted of both robbery and receiving stolen property. The Attorney General concedes the latter point, and we agree. Accordingly, we reverse the finding on the receiving stolen property count and affirm the judgment as modified.

## FACTS

Around midnight on February 17, 2012, Enner Mendoza was walking towards his apartment complex in Anaheim when he noticed a gold four-door car driving towards him. When the car sped up, Mendoza became nervous and started walking faster. Suddenly, Mendoza noticed three young men were following him. The three men surrounded Mendoza—one in front and two from behind. One of the men asked Mendoza what time it was. Another one of the men placed a hard object against the back of Mendoza's neck, and the men told Mendoza to give them all his belongings. Mendoza complied, giving them his black messenger bag, which contained a laptop computer, an iPad, an iPhone, and headphones. The bag also contained important documents including Mendoza's passport and his disability application paperwork. The men also took Mendoza's wallet and watch. They got in the car and were laughing as they drove off.

2

Mendoza went inside his apartment and called 911 while tracking his iPhone with a GPS tracking program on his computer describing its location to the dispatcher. Police located the car at a liquor store in Fullerton. Steven and two other men were in the car and were detained by police. The police found Mendoza's black bag in the trunk of the car with his laptop computer, iPad, and watch inside the bag. A replica handgun was found under the front passenger seat of the car.

An officer brought Mendoza for an in-field line-up. Mendoza identified Steven as one of the perpetrators—the one who confronted him, blocked his path, and did most of the talking—and identified his property. Mendoza also identified one of the other men, but could not identify the third. At trial, Mendoza testified he recognized Steven as one of the three men who confronted him.

Steven presented an alibi defense and denied participating in the robbery. He testified that on the night of the Mendoza robbery, he was at his friend Maritza Diaz's house from about 11 p.m. until about 12:15 a.m. After leaving her house, Steven was walking down an alley when a gold car approached. Steven knew the man in the front passenger seat, Jagger Molina, but did not know the driver. Steven got into the backseat of the car. Molina said he had a stolen laptop computer he needed Steven to sell; Steven said he might know someone who would buy it. They drove to a liquor store and were in the car when the police arrived. Diaz corroborated Steven's alibi testimony, testifying he was with her from about 11 p.m. until a little after midnight and he left her house on foot walking down the alley.

The petition charged Steven with second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) (count one); receiving stolen property (Pen. Code, § 496, subd. (a)) (count two); possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a))(count three); and possession of controlled substance paraphernalia (Health & Saf. Code, § 11364.1, subd. (a)) (count four). On the prosecution's motion, the court dismissed the controlled substance counts (counts three and four).

The juvenile court sustained the petition and found the allegations in counts one and two true beyond a reasonable doubt. The court subsequently declared Steven a ward of the court. It found the matter to be a felony with a maximum term of confinement of five years (see Pen. Code, § 213, subd. (a)(2) [second degree robbery punishable by term of two, three, or five years]), noting that pursuant to Penal Code section 654 it could not punish Steven for both robbery and receiving stolen property, and committed Steven to juvenile hall for 365 days with 182 days of custody credits and probation upon release.

DISCUSSION

1. *Admissibility of Steven's Prior Consistent Statements to Police*

Steven contends the juvenile court erred by not permitting him to introduce into evidence statements he made to police on the night of his arrest that Steven asserts were consistent with his alibi defense. We find no error.

After Steven testified, and the prosecution cross-examined him impeaching him with prior juvenile adjudications and questioning his alibi, Steven called Anaheim Police Officer Jared Dewald as a defense witness. Dewald interviewed Steven at the liquor store after he was detained and handcuffed. When defense counsel asked Dewald if Steven had told him what happened prior to his arrest and asked "did he tell you that he had been at--[,]" the prosecutor objected the question called for hearsay. Defense counsel responded, "these are going to be prior consistent statements." The juvenile court excluded the testimony.

Steven contends statements he made to Dewald that were consistent with his alibi defense at trial were admissible prior consistent statements because they were offered after the prosecution "attacked [Steven's] alibi defense on cross-examination . . . ." "[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the hearsay nature of the evidence in question [citations]." (*People v. Waidla*

4

(2000) 22 Cal.4th 690, 725.) A "trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

The juvenile court did not abuse its discretion by excluding post-detention statements to Dewald that Steven asserts would have been consistent with his trial testimony.[1] Evidence Code section 1236 provides, "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with [Evidence Code] [s]ection 791."

Evidence Code section 791 provides: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after: [¶] (a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or [¶] (b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper

---

[1] We question whether Steven waived any complaints because there was no adequate offer of proof as to what Dewald's testimony would be. "In general, a judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 580 (*Anderson*).) Furthermore, an offer of proof must "'set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued.' [Citation.]" (*People v. Brady* (2005) 129 Cal.App.4th 1314, 1332.) "This rule is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice. [Citations.]" (*Anderson*, *supra*, 25 Cal.4th at pp. 580-581.) Here, Steven made no offer as to what his statements to Dewald actually were, only that there were statements made that would be consistent with his alibi defense. However, given that the Attorney General has not raised the adequacy of Steven's offer of proof, we address the merits of Steven's argument.

motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."

"A prior statement consistent with a witness's trial testimony is admissible only if either (1) a prior *inconsistent* statement was admitted and the consistent statement predated the inconsistent statement, or (2) an express or implied charge is made that the testimony is recently fabricated or influenced by bias or other improper motive, and the consistent statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen. [Citation.]" (*People v. Smith* (2003) 30 Cal.4th 581, 630 (*Smith*).)

Here, there was no prior inconsistent statement admitted against Steven to which his post-detention consistent statements would have been relevant. Steven's argument is based on the second predicate, i.e., a charge that trial testimony was recently fabricated or has been influenced by bias or other improper motive. Steven argues the prosecution's cross-examination of him "implicitly accused [Steven] of fabricating his alibi testimony" and thus his post-detention statements to police that were consistent with his trial testimony would had "served as proper rehabilitation . . ." But his argument ignores that his prior consistent statements were made *after* his motive for bias or fabrication arose and therefore were not admissible as a prior consistent statement. (*People v. Hitchings* (1997) 59 Cal.App.4th 915, 920-921.) Steven had already been detained and handcuffed and was in possession of items recently stolen from Mendoza, which Steven admits he knew to be stolen. As explained in *Hitchings*, "the arrest provided a motive for bias or fabrication." (*Id.* at p. 921; see also *Smith, supra,* 30 Cal.4th at pp. 629-630 [trial court did not abuse discretion by excluding defendant's post-arrest statements because they were made after defendant's motive to fabricate arose].)

Moreover, even if we were to conclude the juvenile court's ruling was error, we cannot say it is reasonably probable the court would have reached a more

6

favorable result in the absence of the error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  Mendoza identified Steven on the night of the robbery and at trial as one of the perpetrators.  The court heard Diaz's testimony corroborating Steven's alibi testimony. We cannot say it is reasonably probable the court would have made a different finding had it received evidence that when he was apprehended, Steven told police the same story he told at trial.

2. *Receiving Stolen Property Count*

The juvenile court sustained allegations of second degree robbery and of receiving stolen property, i.e., Mendoza's messenger bag, laptop computer, iPad, iPhone, wallet, etc.  However, as the Attorney General concedes, a person may not be convicted of both stealing property and receiving the same stolen property.  (Pen. Code, § 496, subd. (a); see also *People v. Garza* (2005) 35 Cal.4th 866, 874; *People v. Jaramillo* (1976) 16 Cal.3d 752, 757 (*Jaramillo*).)  This limitation has been applied to juvenile court proceedings as well.  (See e.g., *In re Kali D.* (1995) 37 Cal.App.4th 381, 385, disapproved on other grounds in *People v. Allen* (1999) 21 Cal.4th 846, 861, fn. 16.) Theft is a lesser included offense of robbery, as theft is an element of that offense. (*People v. Kelley* (1990) 220 Cal.App.3d 1358, 1366.)  Thus, one cannot be convicted of both robbery and of receiving the same stolen property taken during the robbery.  (*People v. Stephens* (1990) 218 Cal.App.3d 575, 586 (*Stephens*); see also *People v. Narvaez* (2002) 104 Cal.App.4th 1295, 1297-1298, fn. 2.)  Although the juvenile court attempted to resolve this problem when it specifically noted that under Penal Code section 654 it could not *punish* him for both offenses, its solution ignores the basic rule that a defendant may not be convicted of both charges.  (*Jaramillo*, *supra,* 16 Cal.3d at p. 757.) Accordingly, the appropriate remedy is to reverse the sustained allegation as to the violation of Penal Code section 496, subdivision (a).  (*Stephens*, *supra,* 218 Cal.App.3d at p. 587.)  We note that because the court did not impose punishment for this charge, our decision does not change Steven's maximum term of confinement.

7

DISPOSITION

The sustained allegation in count 2 for receiving stolen property

(Pen. Code, § 496, subd. (a)), is reversed.  In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.